1
2
3
4
5
6
7
8

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

9

James L. Kemp,

No. CV-15-01784-PHX-PGR (ESW)

10
        Plaintiff,

**REPORT AND RECOMMENDATION**

11
v.

12
Joseph M. Arpaio, et al.,

13
        Defendants.

14

15
**TO THE HONORABLE PAUL G. ROSENBLATT, SENIOR UNITED STATES DISTRICT JUDGE:**

16

17
        On September 8, 2015, Plaintiff filed a civil rights Complaint (Doc. 1) pursuant to

18
42 U.S.C. § 1983.  The Court dismissed the Complaint with leave to amend for failure to

19
comply with the Local Rules of Civil Procedure.  (Doc. 13).  On December 31, 2015,

20
Plaintiff filed a First Amended Complaint (Doc. 14) that named fifty Defendants and

21
contained sixteen counts.  In its February 3, 2016 Order, the Court dismissed without

22
prejudice Counts One, Two, Three, Four, Six, Seven, Nine, Ten, Twelve, Thirteen,

23
Fourteen and Fifteen.  (Doc. 19 at 22).  The Court required (i) Defendant Feraru to

24
answer Count Five; (ii) Defendants San Martin and Anders to answer Count Eight; (iii)

25
Defendants Jorgie,[1] Fulford,[2] and Baerg to answer Count Eleven; and (iv) Defendants

26
Arpaio and Tenny to answer Count Sixteen.   (*Id*.).  The Court dismissed the remaining

27

28
        [1] Defendant "Jorgie" is actually Georgiana Guta.  (Doc. 43 at 1 n.1).

        [2] Defendant "Fulford" is actually Chantae Bernal-Fulford.  (Doc. 43 at 1 n.2).

Defendants.  (*Id.*).   Defendants Feraru, San Martin, Guta (Jorgie), Bernal-Fulford, Arpaio, and Tenny have been served and answered the First Amended Complaint on June 28, 2016 (Doc. 43).  Defendant Anders has been served and filed his Answer (Doc. 56) on August 8, 2016.  Defendant Baerg has filed a Motion to Dismiss for Insufficient Service of Process (Doc. 63).

In a separate Order, the undersigned granted Plaintiff's "Motion to Amend First Amended Complaint and to Join Additional Parties" (Doc. 51).  The undersigned has screened the Second Amended Complaint (Doc. 76) pursuant to 28 U.S.C. § 1915(A). As the undersigned's determination is dispositive of some of Plaintiff's claims, the undersigned makes the following Report and Recommendation pursuant to Rule 72(b), Fed. R. Civ. P., and 28 U.S.C. § 636(b)(1)(B) and (C).

## I.  LEGAL STANDARDS

### A.  Screening the Second Amended Complaint

The Court has a continuing obligation to screen complaints brought by prisoners seeking relief against an officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The screening requirement extends to proposed amended complaints as well as complaints initially filed in an action.  The Prison Litigation Reform Act, 42 U.S.C. § 1997e (c)(1), requires the Court to dismiss all allegations that fail to state a claim upon which relief may be granted.  *See O'Neal v. Price*, 531 F.3d 1146, 1153 (9th Cir. 2008). The Court must dismiss a complaint or portion thereof that is legally frivolous, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from suit.  28 U.S.C. § 1915(A)(b)(1), (2).

In reviewing Plaintiff's Second Amended Complaint, the Court must accept as true all well-pled factual allegations and draw all reasonable inferences therefrom.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296-98 (9th Cir. 1998).  A claim for relief must be plausible on its face to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  "A

claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 679.

Finally, a second amended complaint supersedes a first amended complaint. *See Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Court will treat a first amended complaint as nonexistent. *Ferdik*, 963 F.2d at 1262 ("after amendment the original pleading no longer performs any function and is treated thereafter as non-existent") (internal quotation marks and citation omitted). Any cause of action that was raised in the first amended complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in a second amended complaint. *See Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

**B.   Stating a Claim under 42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege *facts* supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). With respect to each defendant named in a particular count, a "plaintiff must allege facts, *not simply conclusions*, that show that [the] individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998) (emphasis added). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. *See Ivey v. Bd. of Regents,* 673 F.2d 266, 268 (9th Cir.1982) (complaint devoid of specific factual allegations of personal participation is insufficient).

In addition, "[t]here is no respondeat superior liability under § 1983." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.1989); *see also Iqbal, 556 U.S. at 676–77; Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1020–21 (9th Cir. 2010); *Ewing v. City of Stockton*,

588 F.3d 1218, 1235 (9th Cir. 2009). "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *See Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011) (citation and internal quotation marks omitted); *Rizzo v. Goode,* 423 U.S. 362, 371 (1976) (absent a positive act on behalf of the supervisor, the plaintiff must show an "affirmative link" between the supervisor's acts and the alleged constitutional violation).

"The requisite causal connection can be established . . . by setting in motion a series of acts by others," or by "knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Starr v. Baca,* 652 F.3d 1202, 1207-08 (9th Cir. 2011); *see also Larez v. City of Los Angeles,* 946 F.2d 630, 646 (9th Cir. 1991) ("Supervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates, for his acquiescence in the constitutional deprivations of which the complaint is made, or for conduct that showed a reckless or callous indifference to the rights of others."). "[W]here the applicable constitutional standard is deliberate indifference, a plaintiff may state a claim for supervisory liability based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by others." *Hydrick v. Hunter,* 669 F.3d 937, 941 (9th Cir. 2012) (internal citation and quotations omitted).

## II. ANALYSIS

### A. Count One

As explained in the Court's February 3, 2016 Order, Count One of the First Amended Complaint alleges that

> [Plaintiff's] Fourteenth Amendment rights were violated when, between January 26, 2010 and December 8, 2015, Defendant Maricopa County Sheriff Joseph Arpaio placed him in administrative segregation units that were also punitive segregation units, and he was housed with known violent and seriously mentally inmates. Plaintiff claims that on April 7, 2010,

he was physically assaulted by another inmate after Defendant Rada (Detention Officer) refused to move him to "safety." (Doc. 14 at 4.) Plaintiff claims he was again assaulted on August 6, 2010, after Defendant Najera (Detention Officer) refused to move him to a safe housing unit. (*Id*.) Plaintiff was assaulted again on August 18, 2013, after Defendant Tenny (Supervisor Sergeant) refused to remove "a known psychotic, violent mentally ill inmate from [Plaintiff's] 'hour out.'" (*Id*.) Plaintiff claims he was again assaulted on September 6, 2014, after Defendant Garner (Supervisor Sergeant) "allowed a known violent convict into a make-shift 'barber shop' with no security cameras or MCSO staff monitoring." Plaintiff further claims that a matter of policy or practice, Defendants Arpaio, McKay (Supervisor Sergeant), Tenny Garner, and Fisk (Supervisor Sergeant) continued to place known violent and seriously mentally ill inmates into his cell area, causing him to be assaulted and threatened.

(Doc. 19 at 4).

The Court ruled that Plaintiff's allegations regarding assaults that occurred on April 7, 2010, August 6, 2010, and August 18, 2013 are barred by the two-year statute of limitations. (*Id*. at 5). The Court further ruled that Plaintiff "has not alleged facts demonstrating that each named Defendant was aware [of] a specific substantial risk of harm to *Plaintiff's* safety; specifically, he has not alleged when he informed each Defendant that he was in danger or how each Defendant was aware of the danger, nor has he alleged when each Defendant refused to move him or other inmates." (*Id*.) (emphasis in original). The Court dismissed Count One for failure to state a claim.

In Second Amended Count One, Plaintiff cites the "Continuing Wrongs Rule." (Doc. 76 at 7). Under the continuing violation theory, a plaintiff may seek relief for events outside of the limitations period if a series of violations are related closely enough to constitute a continuing violation and that one or more of the acts falls within the limitations period. *See Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001). However, if the "heart of plaintiffs' complaint does not stem from the policy . . . but rather from the individualized decisions that resulted from implementation of a policy [,] [then] . . . [t]hese individualized decisions are best characterized as discrete acts, rather than as a

pattern or practice of discrimination." *Cherosky v. Henderson*, 330 F.3d 1243, 1247-48 (9th Cir. 2003) (holding that plaintiffs' allegation that discrete acts, which fell outside the limitations period, were undertaken pursuant to a discriminatory policy that continued to be implemented within the limitations period does not extend the limitations period as to the time-barred acts). In other words, "each time a policy is invoked to deny an individual plaintiff's request, an independently wrongful, discrete act occurs, a claim accrues, and the limitations period begins to run." *Pouncil v. Tilton*, 704 F.3d 568, 579 (9th Cir. 2012).

Here, the alleged assaults occurring on April 7, 2010, August 6, 2010, and August 18, 2013 are discrete acts. The undersigned does not find that the continuing violation theory applies. The undersigned recommends that the Court affirm its prior ruling that Plaintiff's allegations regarding the assaults that occurred on April 7, 2010, August 6, 2010, and August 18, 2013 are time-barred.

In Second Amended Count One, Plaintiff raises an Eighth Amendment failure to protect claim. The Supreme Court has held that mere negligent failure to protect an inmate from another inmate is not actionable under Section 1983. *Davidson v. Cannon*, 474 U.S. 344 (1986). A prison official violates the Eighth Amendment in failing to protect one inmate from another only when two conditions are met. First, the alleged constitutional deprivation must be, objectively, "sufficiently serious;" the official's act or omission must result in the denial of "the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, the prison official must have a "sufficiently culpable state of mind," *i.e.*, he must act with deliberate indifference to inmate health or safety. *Id.* In defining "deliberate indifference" in this context, the Supreme Court has imposed a subjective test: "the official must *both* be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* he must also draw the inference." *Id.* at 839 (emphasis supplied).

Plaintiff alleges that "[f]rom 7-01-2014 to 9-12-2014, [Plaintiff] asked Defendants Garner, Brown and Arpaio to remove known violent inmates, R.M. and A.B. after [Plaintiff] received death threats from them."   (Doc. 76 at 7).   Plaintiff alleges that Defendants refused Plaintiff's requests and on September 8, 2014, Plaintiff was "hospitalized after A.B. beat [him] and cut [his] chest with a razor." (*Id.*).   Liberally construing Second Amended Count One, the undersigned finds that Plaintiff has sufficiently stated an Eighth Amendment failure to protect claim against Defendants Garner, Brown, and Arpaio regarding the alleged September 8, 2014 assault.   The undersigned thus recommends that the Court require Defendants Garner, Brown, and Arpaio to answer the claim.

### B.  Count Two

Plaintiff designates Count Two of the Second Amended Complaint as a claim for retaliation.   (*Id.* at 9). Plaintiff alleges that he wrote four separate grievances against Defendant Klages from August 15, 2014 through October 4, 2014.   (*Id.*).   On or about September 27, 2014, Defendants Klages, Rubio, and Shugart allegedly confiscated Plaintiff's grievances and refused to return them.   Defendant Klages' Team Leader, Defendant McKay, allegedly ordered Defendant Flannery and three other officers to raid his cell on October 1, 2014.[3]   (*Id.*).   Defendant claims that the officers confiscated his legal papers.   Plaintiff asserts that the confiscation was in retaliation for his grievances against Defendant Klages, alleging that Defendant Flannery stated "You know why . . ." when Plaintiff asked him why his cell was raided.  (*Id.* at 9).

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2013).   To state a constitutional claim for retaliation, a plaintiff must allege that a defendant acting under color of state law took adverse action against him because he engaged in protected conduct, the adverse action was not narrowly tailored to advance

---

[3] Defendant does not name the three other officers.

legitimate goals, and the adverse action chilled the plaintiff's exercise of his First Amendment rights or caused him to suffer more than minimal harm.  *Rhodes v. Robinson*, 408 F.3d 559, 567-58 (9th Cir. 2005); *see also Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997) (retaliation claims require an inmate must show (i) that the prison official acted in retaliation for the exercise of a constitutionally-protected right, and (ii) that the action "advanced no legitimate penological interest").

Here, Plaintiff has not alleged facts suggesting that the alleged adverse actions chilled his exercise of his First Amendment rights.   In fact, Plaintiff states that he wrote a grievance against Defendant Klages on October 4, 2014, which is after the alleged confiscations occurred.   Moreover, Plaintiff has not alleged facts suggesting that the alleged confiscations caused him to suffer more than minimal harm.   The undersigned finds that Plaintiff's Second Amended Count Two fails to state a claim.   The undersigned therefore recommends that the Court dismiss Count Two of the Second Amended Complaint.

## C.  Count Three

Count Three of the Second Amended Complaint presents claims under 42 U.S.C. §§ 1985 and 1986.   (Doc. 76 at 11).   Plaintiff alleges that Defendants Carper and Montgomery (i) conspired with Defendant Arpaio to suppress Plaintiff's collection of inmate witness statements that could be used against Arpaio in the District Court cases and (ii) conspired to deter Plaintiff from testifying in District Court against Arpaio.  (*Id*. at 12).

42 U.S.C. § 1985 contains three subsections.   42 U.S.C. § 1985(1) prohibits conspiracies designed to prevent an individual from "holding any office . . . under the United States, or from discharging any duties thereof  . . . ."

42 U.S.C. § 1985(2) has two parts: "The first part of the subsection addresses conspiracies 'which deter by force, intimidation, or threat a party or witness in federal court.'" *Id.* (internal citations omitted).   "The second part of the subsection creates a federal right of action for damages against conspiracies which obstruct the due course of

justice in any State or Territory with intent to deny equal protection." *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 763 (9th Cir. 1991), *cert. denied,* 502 U.S. 1091 (1992); *see also Kimble v. D.J. McDuffy, Inc.,* 648 F.2d 340, 348 (5th Cir. 1981) ("Congress meant Section 1985(2) to protect a party while attending or testifying in court."). To bring a claim under Section 1985(2)'s second part, a plaintiff must allege "class-based, invidiously discriminatory animus." *Id.*

> Finally, 42 U.S.C. § 1985(3) provides:
>> If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws ... the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

The elements of a 42 U.S.C. 1985(3) action are: "(1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of a right or privilege of a United States citizen." *Mustafa v. Clark County School Dist.*, 157 F.3d 1169, 1181 (9th Cir. 1998).

It appears that Plaintiff may be asserting a claim under the first part of 42 U.S.C. § 1985(2) and/or under 42 U.S.C. § 1985(3). Plaintiff has failed to state a claim under both subsections. First, Plaintiff has not alleged facts showing that Defendants acted in concert, or had a "meeting of the minds" to deprive Plaintiff of his constitutional rights. "A mere allegation of conspiracy without factual specificity is insufficient." *Karim–Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988) (explaining that a Section 1985 claim "must allege facts to support the allegation that defendants conspired together"); *see also Mahaney v. Warren County*, 206 F.3d 770, 772 (8th Cir. 2000) ("bare" allegations and "rank" conjecture are insufficient to support a claim under Section 1985 for a civil conspiracy). Next, Count Three does not contain facts from which it can be plausibly inferred that Defendants allegedly conspired against

Plaintiff on the basis of class-based, invidiously discriminatory animus. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (holding that Section 1985 conspiracy claim was properly dismissed because plaintiff had failed to allege facts establishing invidious discrimination); *Farese v. Scherer*, 342 F.3d 1223, 1229 n.7 (11th Cir. 2003) ("Farese alleges that he states a claim against the Defendants under § 1985(3) because he is a member of the 'prisoner class.' . . . [W]e conclude that the district court properly dismissed Farese's § 1985(3) claim because prisoners are neither a class offered special protection under the equal protection clause nor a class that Congress intended to protect when it enacted § 1985(3)."); *Ellibee v. Hazlett*, 122 F. App'x. 932, 935 (10th Cir. 2004) ("Ellibee has asserted that the alleged conspiracy was motivated by his membership in a class consisting of 'incarcerated felons.' This is not a class protected by § 1985. Accordingly, Ellibee's federal conspiracy claim fails.").

Finally, Plaintiff cannot establish a claim under the first part of 42 U.S.C. § 1985 as Plaintiff has not alleged that a party intended to call Plaintiff as a witness in the federal cases against Defendant Arpaio. Plaintiff has no freestanding constitutional right to testify at the hearings in those cases.

For the above reasons, the undersigned recommends that the Court dismiss Plaintiff's 42 U.S.C. § 1985 claim. Because "[a] claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985," the undersigned also recommends that the Court dismiss Plaintiff's 42 U.S.C. § 1986 claim. *Karim-Panahi*, 839 F.2d at 626; *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985) ("This Circuit has recently adopted the broadly accepted principle that a cause of action is not provided under 42 U.S.C. § 1986 absent a valid claim for relief under section 1985."). Accordingly, the undersigned recommends that the Court dismiss Count Three of the Second Amended Complaint.

### D.  Count Four

Plaintiff has not amended Count Four of the First Amended Complaint.  The undersigned recommends that the Court dismiss Count Four of the Second Amended Complaint (Doc. 76 at 13) for the reasons set forth in its prior Order (Doc. 19 at 8).

### E.  Count Five

Plaintiff has not amended Count Five of the First Amended Complaint.  The undersigned recommends that the Court order Defendant Feraru to answer Count Five of the Second Amended Complaint (Doc. 76 at 8) for the reasons set forth in the Court's prior Order (Doc. 19 at 9-10).

### F.  Count Six

Count Six of the Second Amended Complaint presents claims under 42 U.S.C. §§ 1985 and 1986.  (Doc. 76 at 16).  Plaintiff has not alleged facts showing that Defendants acted in concert, or had a "meeting of the minds" to deprive Plaintiff of his constitutional rights.  As Plaintiff has not alleged that a party intended to call Plaintiff as a witness, Plaintiff has no constitutional right to testify in the federal cases against Defendant Arpaio.  Plaintiff also does not allege facts from which the Court may plausibly infer that Defendants allegedly conspired against Plaintiff on the basis of class-based, invidiously discriminatory animus.  Therefore, for the reasons discussed in Section III(C) above, the undersigned recommends that the Court dismiss Plaintiff's 42 U.S.C. §§ 1985 and 1986 claims contained in Count Six.

Count Six also presents a First Amendment retaliation claim.   Count Six re-alleges facts contained in Count Three concerning certain letters Plaintiff wrote to Defendant Carper that primarily concerned civil rights abuses at the jail.  (Doc. 76 at 16).  Count Six alleges that Defendants Arpaio, Tenny, and McKay communicated the content of those letters to Defendant Fisk and directed Defendant Fisk to raid Plaintiff's cell on February 6, 2015 "to locate and confiscate all of the Sections 1985/1986 related documents . . . ."  (*Id*.).  Plaintiff alleges that after the raid, Defendant Fisk gave Plaintiff a "False Misconduct Write-up for the §§ 1985, 1986 documents he discovered

in [his] stamped, sealed, legal envelope" addressed to "friends and lawyers" at a law firm.  (*Id.*).  Plaintiff states that Defendant Fisk then moved him to the "Disciplinary Lockdown for inmates who had assaulted officers and other inmates."  (*Id.*).  Plaintiff further asserts that Defendants Arpaio, Tenny, McKay, and Fisk placed him in a cell "where they knew [Plaintiff] was most likely to be assaulted—with known, violent EBK gang member 'S.T.'" and that Defendant Fisk assigned Defendant Chavira to work the pod.  Plaintiff previously wrote grievances against Defendant Chavira.  (*Id.*).

Plaintiff further alleges that (i) Defendant Chavira told inmate S.T. about Plaintiff's grievances against Defendant Chavira and told S.T. to retaliate against Plaintiff, (ii) inmate S.T. followed Defendant Chavira's instructions to "plac[e] a large glob of wet toilet paper over [their] cell intercom"; and (iii) "S.T. then went on a 4 hour, screaming rampage in which he threatened to beat [Plaintiff] to death and have his EBK gang members 'Homies' kidnap and torture [Plaintiff's] mother if [he] brought any 'Heat' (Formal Complaints) against Chavira or her Fisk Teammate, Chavez."  (*Id.*). Plaintiff claims that the retaliation caused extreme sleep deprivation.[4]

Liberally construed, the undersigned finds that Count Six adequately states a First Amendment retaliation claim against Defendants Arpaio, Tenny, McKay, Fisk, and Chavira.  The undersigned recommends that the Court require those Defendants to answer the retaliation claim contained in Count Six of the Second Amended Complaint.

### G.  Counts Seven and Nine

In Count Seven of the Second Amended Complaint, Plaintiff states that on or about March 19, 2015, he wrote a grievance against Defendants Tenny and McKay on behalf of an elderly inmate because that inmate suffered from mental and physical disabilities.  (*Id.* at 18).  Plaintiff alleges that on April 2, 2015, Defendant Tenny came to Plaintiff's cell door "spitting with rage" and "threatened, 'Let me tell you something,

---

[4] Plaintiff also alleges "irreparable damages" to his criminal defense.  However, a prisoner's civil rights claim for damages attributable to an allegedly unconstitutional conviction or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid does not accrue until his sentence or fact of imprisonment has been invalidated.  *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

smart guy, <u>YOU ARE DONE! . . . YOU WRITE NO MORE GRIEVANCES!</u> . . . You're going to get a LITTLE VISIT Tomorrow, and You're going to find out you're not as smart as you think!"  (*Id.*) (emphasis in original).  Plaintiff further alleges that on April 3, 2015, Defendants Tenny, McKay, Wade, Bretado, and Cooper came to Plaintiff's cell door and that Defendant Wade informed Plaintiff that he was on "Grievance Protocol" and would not be allowed copies of any of his grievances.  (*Id.*).  Defendant Wade allegedly wrote Plaintiff up for writing grievances, stripped Plaintiff of all privileges, and threatened Plaintiff with another "trip to the hole."  (*Id.*).  Defendant Tenny allegedly left Plaintiff with an inmate who threatened to "shank" Plaintiff as punishment for writing the grievance on behalf of the inmate.  (*Id.*).

In Count Nine, Plaintiff alleges that in May 2015 he provided several inmates with legal assistance.  (*Id.* at 21).  Plaintiff states that on May 18, 2015, Defendants Wade and Copper gave Plaintiff a "'Misconduct' D.A.R. write-up" for assisting those inmates and was punished with "15 days full restrictions" and threatened with "another trip to the hole."  (*Id.*).

"While there is no personal right to be a jailhouse lawyer, to assure access to the courts, a prison must allow prisoners to assist one another unless there is available to prisoners a reasonable, alternative means of legal assistance."  *Munz v. Nix*, 908 F.2d 267, 268 n.3 (8th Cir. 1990) (citing *Johnson v. Avery,* 393 U.S. 483, 490 (1969)).  However, "it is far from clear that 'the right to provide legal advice follows from a right to receive legal advice.'"  *Blaisdell v. Frappiea*, 729 F.3d 1237, 1245 (9th Cir. 2013) (citing *Shaw v. Murphy*, 532 U.S. 223, 231 n.3 (2001); *cf. Thaddeus–X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999) ("It is clear in this circuit that an inmate does not have an independent right to help other prisoners with their legal claims. . . .  Rather, a 'jailhouse lawyer's' right to assist another prisoner is wholly derivative of that prisoner's right of access to the courts; prison officials may prohibit or limit jailhouse lawyering unless doing so interferes with an inmate's ability to present his grievances to a court.").

Here, Counts Seven and Nine do not contain facts from which the Court may plausibly infer that the inmates Plaintiff assisted had no reasonable, alternative means of legal assistance.  Therefore, assuming arguendo that a prisoner has the right to provide legal assistance to another inmate who does not have alternative means of obtaining such assistance, Plaintiff has failed to state a claim.  The undersigned therefore recommends that the Court dismiss Counts Seven and Nine of the Second Amended Complaint.

### H.  Count Eight

Plaintiff has not amended Count Eight of the First Amended Complaint.  The undersigned recommends that the Court order Defendants San Martin and Anders to answer Count Eight of the Second Amended Complaint (Doc. 76 at 19) for the reasons set forth in the Court's prior Order (Doc. 19 at 13).

### I.  Count Ten

Count Ten of the Second Amended Complaint claims that Petitioner received inadequate medical care.  (Doc. 76 at 23).  Not every claim by a prisoner relating to inadequate medical treatment states a violation of the Eighth or Fourteenth Amendment. To state a Section 1983 medical claim, a plaintiff must show that the defendants acted with "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A plaintiff must show (1) a "serious medical need" by demonstrating that failure to treat the condition could result in further significant injury or the unnecessary and wanton infliction of pain and (2) the defendant's response was deliberately indifferent.  *Jett*, 439 F.3d at 1096 (quotations omitted).

"Deliberate indifference is a high legal standard."  *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health; "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Deliberate indifference in the medical context may be shown by a purposeful act or failure to

respond to a prisoner's pain or possible medical need and harm caused by the indifference. *Jett*, 439 F.3d at 1096. Deliberate indifference may also be shown when a prison official intentionally denies, delays, or interferes with medical treatment or by the way prison doctors respond to the prisoner's medical needs. *Estelle*, 429 U.S. at 104-05; *Jett*, 439 F.3d at 1096.

Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. *Farmer*, 511 U.S. at 835. "Neither negligence nor gross negligence will constitute deliberate indifference." *Clement v. California Dep't of Corr.*, 220 F. Supp. 2d 1098, 1105 (N.D. Cal. 2002); *see also Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (mere claims of "indifference," "negligence," or "medical malpractice" do not support a claim under § 1983). "A difference of opinion does not amount to deliberate indifference to [a plaintiff's] serious medical needs." *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). A mere delay in medical care, without more, is insufficient to state a claim against prison officials for deliberate indifference. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). The indifference must be substantial. The action must rise to a level of "unnecessary and wanton infliction of pain." *Estelle*, 429 U.S. at 105.

In Count Ten, Plaintiff alleges that due to a diagnosed kidney disease, Plaintiff's urologists have instructed Plaintiff to follow a renal diet and avoid oxalate rich foods. (Doc. 76 at 23). Plaintiff states that in December 2011, he was placed on the "Arpaio renal diet." Plaintiff alleges that on or about December 20, 2011, a nurse warned Plaintiff that "Arpaio's renal diet" is "all wrong" for Plaintiff's type of kidney stone production. Plaintiff alleges that he started producing more stones on the diet because it was extremely high in oxalates. (*Id.*). Plaintiff, however, does not allege that he raised the issue to prison staff. Further, as noted in the Court's prior Order (Doc. 19 at 15), Plaintiff has not alleged why, if he was instructed to avoid oxalate rich foods, he did not decline to eat the foods. The undersigned finds that Count Ten of the Second Amended Complaint fails to state a claim and recommends that it be dismissed.

**J.  Count Eleven**

Count Eleven presents Eighth and Fourteenth Amendment medical claims relating to kidney stone attacks occurring between December 12, 2010 and October 18, 2013.  (Doc. 76 at 25).  As explained in the Court's February 3, 2016 Order (Doc. 19 at 16), claims relating to attacks that occurred prior to September 2013 are barred by the statute of limitations.  Although Plaintiff asserts the "continuing wrongs rule," each kidney stone attack is a discrete event.  The undersigned recommends that the Court affirm its prior ruling that Plaintiff's claims relating to attacks that occurred prior to September 2013 are time-barred.

In Count Eleven, Plaintiff alleges that on October 18, 2013, he suffered "prolonged extreme pain" due to a kidney stone attack and Defendant Steinhauser refused to provide Plaintiff with needed pain medication.  (Doc. 76 at 25).  Liberally construed, the undersigned finds that Plaintiff has adequately stated an Eighth and Fourteenth Amendment medical claim against Defendant Steinhauser and recommends that the Court require Defendant Steinhauser to answer Count Eleven of the Second Amended Complaint.

Plaintiff also alleges in Count Eleven that on September 9, 2014, Plaintiff returned from the Emergency Room from an inmate assault and was in a wheelchair and unable to walk.  (*Id.*).  Plaintiff alleges that Defendant Burke refused to allow Plaintiff to use the "'X-Duration' wheelchair permit doctors had previously prescribed [Plaintiff]" and denied Plaintiff needed pain medication.  (*Id.*).  Liberally construed, the undersigned finds that Plaintiff has adequately stated an Eighth and Fourteenth Amendment medical claim against Defendant Burke and recommends that the Court require Defendant Burke to answer that claim.

Finally, Count Eleven alleges that on March 13, 2015, Plaintiff had a "major stone attack" and that Defendants Guta, Bernal-Fulford, and Baerg "trivialized" Plaintiff's calls for help and said that Plaintiff's stone attack was not a medical emergency despite allegedly witnessing Plaintiff "vomiting from intense pain, and passing dark, bloody

urine." (*Id.*).  Plaintiff asserts that he received no pain medication or medical treatment for over twelve hours.  Liberally construed, the undersigned finds that Plaintiff has adequately stated an Eighth and Fourteenth Amendment medical claim against Defendants Guta, Bernal-Fulford, and Baerg and recommends that the Court require those Defendants to answer the claim.

### K.  Count Twelve

Count Twelve of the Second Amended Complaint alleges that Defendants Steinhauser and Alvarez, along with Deputy County Attorney Flaggman, created a false medical condition report in retaliation for Plaintiff's "promises to sue both Steinhauser and Alvarez" for deliberate indifference to a serious medical need.  (*Id.* at 27).  Plaintiff has not alleged sufficient facts showing that the allegedly false report chilled Plaintiff's exercise of his First Amendment rights or caused him to suffer more than minimal harm. *Rhodes*, 408 F.3d at 567-58.  The undersigned does not find that Count Twelve of the Second Amended Complaint states a claim and recommends that the Court dismiss it. *See* Order (Doc. 19 at 17-18).

### L.  Count Thirteen

Plaintiff has not amended Count Thirteen of the First Amended Complaint.  The undersigned recommends that the Court dismiss Count Thirteen of the Second Amended Complaint (Doc. 76 at 28) for the reasons set forth in its prior Order (Doc. 19 at 18-19).

### M.  Count Fourteen

In Count Fourteen of the Second Amended Complaint, Plaintiff alleges that Defendant Wade confiscated his medical grievances through June 2015 and violated his constitutional right to privacy by reading the grievances.  (Doc. 76 at 29-30).  Plaintiff alleges that Defendants Montgomery, Arpaio, and Alvarez also violated his constitutional right to privacy by refusing to return his medical grievances and requiring him to submit medical grievances to Defendant Arpaio's staff.  (*Id.* at 29).

The Ninth Circuit has generally addressed a prisoner's claim of a right to informational privacy in their medical records, if any, under the Fourteenth

Amendment.  *See Seaton v. Mayberg*, 610 F.3d 530, 535-39 (9th Cir. 2010).  But "whatever privacy right [a prisoner has] may be overridden for legitimate penological reasons."  *Seaton*, 610 F.3d at 534.  "Prisons need access to prisoners' medical records to protect prison staff and other prisoners from communicable diseases and violence, and to manage rehabilitative efforts."  *Id*. at 535.  In addition, a prisoner does not have a protected liberty interest in prison grievance procedures.  *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) ("There is no legitimate claim of entitlement to a grievance procedure."); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure" and the actions of prison officials in reviewing his internal appeal cannot create liability under 42 U.S.C. § 1983).

Count Fourteen does not adequately allege that requiring Plaintiff to submit medical grievances to Defendant Arpaio's staff does not serve a legitimate penological interest.  The undersigned recommends that the Court dismiss Count Fourteen of the Second Amended Complaint for failure to state a claim.

## N.  Count Fifteen

Count Fifteen presents a breach of contract claim under Arizona law.  (Doc. 76 at 31-32).  Plaintiff alleges that he is a third party beneficiary of the contract between Maricopa County and his court-appointed trial counsel.  Plaintiff asserts that his trial counsel breached "all five 'effective representation' stipulations of the 'contractor's responsibilities' clause of the contract he signed" with Maricopa County.  (Doc. 76 at 31).

The Court has supplemental jurisdiction over state law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a).  Under Arizona law, a person can recover as a third-party beneficiary "only if (1) the contract itself indicates an intention to benefit the third party, (2) the benefit contemplated is intentional and direct and (3) the contracting parties intend to recognize the third party as the primary party in

interest." *Flagstaff Med. Ctr., Inc. v. Sullivan*, 962 F.2d 879, 892 (9th Cir. 1992). "[I]t is not enough that the contract may operate to [the alleged third-party beneficiary's] benefit but it must appear that the parties intended to recognize him as the *primary* party in interest and as privy to the promise." *Armbruster v. WageWorks, Inc.*, 953 F. Supp. 2d 1072, 1076 (D. Ariz. 2013) (quoting *Sherman v. First Am. Title Ins. Co.*, 38 P.3d 1229, 1232 (Ariz. Ct. App. 2002)). That is, "[f]or a third party to maintain an action on a contract, the contract must have been entered into for the express benefit of the third party; the party cannot be merely an incidental beneficiary." *Araiza v. U.S. West Bus. Resources, Inc.*, 904 P.2d 1272, 1278 (Ariz. Ct. App. 1995). The third person must be a real promisee. *Basurto v. Utah Construction and Mining Company*, 485 P.2d 859, 863 (Ariz. 1971) ("The promise must be made to him in fact although not in form and it is not enough that the contract may operate to his benefit but it must appear that the parties intended to recognize him as the Primary party in interest and as privy to the promise.").

Here, Plaintiff fails to allege facts (i) to establish supplemental jurisdiction over this contract claim and (ii) to support that he was a third-party beneficiary of the contract between his trial counsel and Maricopa County. Instead, his allegations reflect that he was, at most, an incidental beneficiary. Moreover, to the extent Plaintiff seeks damages under 42 U.S.C. § 1983 based on the alleged ineffective assistance of his trial counsel, his claim amounts to an attack on the validity of his underlying criminal proceedings, and as such, is not cognizable under 42 U.S.C. § 1983 unless and until he can show that conviction has already been invalidated. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Accordingly, the undersigned recommends that the Court dismiss Count Fifteen of the Second Amended Complaint.

### O.  Count Sixteen

The Court liberally construed Count Sixteen of the First Amended Complaint and found that it stated a Fourteenth Amendment claim against Defendants Arpaio and

Tenny.  (Doc. 19 at 20-21).  The Court did not find that Count Sixteen stated a claim against Defendant Montgomery.  (*Id*. at 21).

In Count Sixteen of the Second Amended Complaint, Plaintiff claims his Fourteenth Amendment rights were violated when, from April 2015 through August 2015, he was housed with a "known, severely mentally ill inmate-patient with a long history of violent assaults."  (Doc. 76 at 34).  Plaintiff alleges that Defendants Arpaio, Alvarez, Tenny, and McKay intentionally placed the inmate in his cell, refused to take him out, and subjected Plaintiff "to sadistic, daily torture and intimidation—for 4 months . . . ."  (*Id*.).  Liberally construed, the undersigned finds that Plaintiff has adequately stated a Fourteenth Amendment claim against Defendants Arpaio, Alvarez, Tenny, and McKay and recommends that the Court require those Defendants to answer Count Sixteen of the Second Amended Complaint.  The undersigned finds that Plaintiff has failed to state a claim against Defendant Montgomery for the reasons set forth in the Court's February 3, 2016 Order (Doc. 19 at 21).

### III. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Court dismiss Plaintiff's claims in Count One of the Second Amended Complaint regarding the alleged assaults that occurred on April 7, 2010, August 6, 2010, and August 18, 2013.

**IT IS FURTHER RECOMMENDED** that the Court order Defendants Garner, Brown, and Arpaio to answer the Eighth Amendment failure to protect claim pertaining to the alleged September 8, 2014 assault in Count One of the Second Amended Complaint.

**IT IS FURTHER RECOMMENDED** that the Court dismiss the following counts of the Second Amended Complaint: Count Two, Count Three, Count Four, Count Seven, Count Nine, Count Ten, Count Twelve, Count Thirteen, Count Fourteen, and Count Fifteen.

**IT IS FURTHER RECOMMENDED** that the Court order Defendant Feraru to answer Count Five of the Second Amended Complaint.

**IT IS FURTHER RECOMMENDED** that the Court order Defendants Arpaio, Tenny, McKay, Fisk, and Chavira to answer the First Amendment retaliation claim in Count Six of the Second Amended Complaint.  It is further recommended that Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 be dismissed.

**IT IS FURTHER RECOMMENDED** that the Court order Defendants San Martin and Anders to answer Count Eight of the Second Amended Complaint.

**IT IS FURTHER RECOMMENDED** that the Court dismiss claims relating to incidents which occurred prior to September 2013 as time-barred and order Defendants Steinhauser, Burke, Guta, Bernal-Fulford, and Baerg to answer Count Eleven of the Second Amended Complaint regarding alleged Eighth and Fourteenth Amendment medical claims arising from incidents dated October 18, 2013, September 9, 2014, and March 13, 2015.

**IT IS FURTHER RECOMMENDED** that the Court order Defendants Arpaio, Alvarez, Tenny, and McKay to answer Count Sixteen of the Second Amended Complaint.

**IT IS FURTHER RECOMMENDED** that the Court dismiss without prejudice Defendants Maricopa County, Montgomery, Rada, Najera, Klages, Rubio, Shugart-LBJ-McKay Team, Flannery, Carper, Acosta, Flaggman, Balaji, Wade, Bretado, Cooper, Odom, Logan, Cruz, Lee, Angry, Hughes, Bruner, Sminch, and Grange.

**IT IS FURTHER RECOMMENDED** that if the Court adopts this Report and Recommendation, the Court include the following language in its order:

1.   The Clerk of Court shall send Plaintiff a service packet including the Second Amended Complaint (Doc. 76), this Order, and a copy of the Marshal's Process Receipt & Return form (USM-285) and Notice of Lawsuit & Request for Waiver of Service of Summons form for Defendants Baerg, Garner, McKay, Fisk, Chavira, Alvarez, Brown, Steinhauser, and Burke.

2.   Plaintiff shall complete[1] and return the service packet to the Clerk of Court within 21 days of the date of filing of this Order.  The United States Marshal will not provide service of process if Plaintiff fails to comply with this Order.

3.   If Plaintiff does not either obtain a waiver of service of the summons or complete service of the Summons and Second Amended Complaint on a Defendant within 90 days of the filing of the Second Amended Complaint or within 60 days of the filing of this Order, whichever is later, the action may be dismissed as to each Defendant not served.  Fed. R. Civ. P. 4(m); LRCiv 16.2(b)(2)(B)(i).

4.   The United States Marshal shall retain the Summons, a copy of the Second Amended Complaint, and a copy of this Order for future use.

5. The United States Marshal shall notify Defendants Baerg, Garner, McKay, Fisk, Chavira, Alvarez, Brown, Steinhauser, and Burke of the commencement of this action and request waiver of service of the summons pursuant to Rule 4(d) of the Federal Rules of Civil Procedure.  The notice to Defendants shall include a copy of this Order.  The Marshal shall file waivers of service of the summons or requests for waivers that were returned as undeliverable as soon as they are received.  If a waiver of service of summons is returned as undeliverable or is not returned by Defendants within thirty days from the date the request for waiver was sent by the Marshal, the Marshal shall:

(a) Personally serve copies of the Summons, Second Amended Complaint, and this Order upon Defendants pursuant to Rule 4(e)(2) of the Federal Rules of Civil Procedure; and

(b) Within ten days after personal service is effected, file the return of service for Defendants, along with evidence of the attempt to secure a waiver of service of the summons and of the costs subsequently incurred in effecting service upon

---

[1]   If a Defendant is an officer or employee of the Arizona Department of Corrections, Plaintiff shall list the address of the specific institution where the officer or employee works.  Service cannot be effected on an officer or employee at the Central Office of the Arizona Department of Corrections unless the officer or employee works there.

Defendants.  The costs of service shall be enumerated on the return of service form (USM-285) and shall include the costs incurred by the Marshal for photocopying additional copies of the Summons, Second Amended Complaint, or this Order and for preparing new process receipt and return forms (USM-285), if required.  Costs of service will be taxed against the personally served Defendants pursuant to Rule 4(d)(2) of the Federal Rules of Civil Procedure, unless otherwise ordered by the Court.

6.  If Defendants agree to waive service of the Summons and Second Amended Complaint (Doc. 76), he or she shall **return the signed waiver forms to the United States Marshal, not the Plaintiff.**

7. Defendants shall answer the Second Amended Complaint or otherwise respond by appropriate motion within the time provided by applicable provisions of Rule 12(a) of the Federal Rules of Civil Procedure.

**IT IS FURTHER RECOMMENDED** that if the Court allows the Second Amended Complaint to proceed as to Defendants Arpaio, Tenny, and Baerg, the Court deny as moot (i) Defendants Arpaio and Tenny's Motion for Summary Judgment (Doc. 53), which concerns the First Amended Complaint; (ii) Defendant Baerg's "12(B)(5) Motion to Dismiss for Insufficient Service of Process" (Doc. 63); and (iii) Plaintiff's "Motion to Extend Time for Service on Defendant Brendon Baerg" (Doc. 68).

## EFFECT OF RECOMMENDATION

This Report and Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.  The parties shall have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6, 72.  Thereafter, the parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the District Court without further review.  Failure to file timely

objections to any factual determinations of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003); *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated this 16th day of November, 2016.

_____
Eileen S. Willett
United States Magistrate Judge